NO. 03-14-00528-CR

IN THE COURT OF APPEALS
FOR THE
THIRD SUPREME JUDICIAL DISTRICT OF TEXAS
AT AUSTIN

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
6/1/2015 4:11:44 PM
JEFFREY D. KYLE
Clerk

ACCEPTED
03-14-00528-CR
5496967
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/1/2015 4:11:44 PM
JEFFREY D. KYLE
CLERK

NO. 12-0465-K277

IN THE 368th DISTRICT COURT
OF WILLIAMSON COUNTY, TEXAS

JAMES ALAN WEATHERFORD,
APPELLANT

V.

STATE OF TEXAS,
APPELLEE

APPELLANT'S ANDERS BRIEF

DAL RUGGLES
SBN: 24041834
LAW OFFICE OF DAL R RUGGLES
1103 NUECES ST.
AUSTIN, TEXAS 78701
PH: (512) 477-7991
FAX:(512) 477-3580
DAL@RUGGLESLAW.COM

ATTORNEY FOR APPELLANT
ON APPEAL ONLY

# TABLE OF CONTENTS

**PAGE**

Parties to Trial Court's Final Judgment…………………………………………. 3

Index of Authorities……………………………………………………. 4

Statement of the Nature of the Case…………………………..…….…….…...... 6

Statement of Facts………...………………………………………………….... 8

Summary of the Argument …………………………………………………... 24

Argument
    There is No Arguable Issue Which Supports an Appeal
    In This Case…………..………………………………………................... 25

Conclusion……………………………………………………...…………. 29

Prayer for Relief………………………………………………...…………. 29

Certificate of Service…………………………………………………………. 30

Certificate of Compliance…………………………………………………... 30

## PARTIES TO TRIAL COURT'S FINAL JUDGMENT

In accordance with Tex.R.App.Proc. 38.1(a), Appellant certifies that the following is a complete list of the parties and their counsel:

(a) the State of Texas represented by:

Ms. Elizabeth Whited – trial attorney
State Bar No. 24060823
Williamson County District Attorney's Office
405 Martin Luther King Drive
Georgetown, Texas 78626

Mr. Danny Wallace Smith, Jr. – trial attorney
State Bar No. 24046867
Williamson County District Attorney's Office
405 Martin Luther King Drive, Box 1
Georgetown, Texas 78626

(b) Mr. James Alan Weatherford, represented by:

Mr. Daniel H. Wannamaker – trial attorney
State Bar No. 20834300
Wannamaker & Associates
1012 Rio Grande Street
Austin, Texas 78701

Dal Ruggles – appellate attorney
State Bar No. 24041834
The Law Office of Dal R Ruggles
1103 Nueces St.
Austin, Texas 78701

# INDEX OF AUTHORITIES

**CASES**                                                                                                                                                    **PAGE**

Anders v. California, 386 U.S. 738, 744 (1967)…………….................. 24, 25, 29

Blanco v. State, 771 S.W.2d 598, 599 (Tex.Crim.App.-Corpus Christi 1989,
no pet.)...................................................................................................................27

Coghlan v. Starkey, 852 F.2d 806, 811 (5th Cir. 1988) ...........................................25

Dinnery v. State, 592 S.W.2d 343, 353 (Tex.Crim.App. 1979)
(opinion on rehearing). ......................................................................................26

Ex parte Smith, 678 S.W.2d 78, 79 (Tex.Crim.App. 1984)......................................27

High v. State, 573 S.W.2d 807, 813 (Tex.Crim.App. [Panel Op.] 1978) ...............25

Jeffery v. State, 903 S.W.2d 776, 779 (Tex.App.-Dallas 1995, no pet.)...............  25

Johnson v. State, 885 S.W.2d 641, 646 (Tex.App.-Waco 1994, pet ref.)……. 25, 26

Liggins v. State, 979 S.W.2d 56, 67 (Tex.App.-Waco 1998, pet. ref.)................... 27

Munoz v. State, 840 S.W.2d 69, 72 (Tex.App.-Corpus Christ 1992, pet. ref)........ 28

Richards v. State, 562 S.W.2d 456, 458 (Tex.Crim.App. 1977)
(opinion on rehearing).......................................................................................... 27

Rodriguez v. State, 850 S.W.2d 603, 607 (Tex.App.-El Paso 1993, no pet.) ........ 28

Smith v. State, 853 S.W.2d 140, 141 (Tex.App.-Corpus Christ 1993, no pet.)...... 27

United States v. Johnson, 527 F.2d 1328, 1329 (5th Cir.1976)..……..…............... 24

## CONSTITUTIONAL PROVISIONS, STATUTES AND RULES          PAGE

Tex.R.App.Proc. 38.1(a)……………………..…………………….................. 3

Art. 26.13, V.A.C.C.P……………………………………………………..27

**TO THE HONORABLE JUDGES OF SAID COURT:**

COMES NOW, James Alan Weatherford, Appellant in this cause, by and through his Attorney, and files this, his brief on original appeal.

## STATEMENT OF THE NATURE OF THE CASE

Appellant was charged by indictment on June 7, 2012 in Cause No. 12-0465-K277 with 9 counts of possession with intent to promote child pornography and 15 counts of possession of child pornography.[1] (C.R. pp. 28-36) On July 21, 2014, Appellant entered a plea of Guilty to counts 1-9 in the indictment to the lesser-included charge of possession of child pornography and counts 10-24 in the indictment charging possession of child pornography. Appellant's plea was given open to the court with no agreed recommendation as to punishment. (C.R. pp. 105-108) (R.R. IV, pp. 9-12)

On July 23, 2014, Appellant waived his right to a jury trial for punishment went to the court for a hearing on punishment. At the culmination of the hearing, the trial judge found Appellant guilty on counts 1 through 24 in Cause No. 12-0465-K277 of the offense of possession of child pornography. (R.R. VI, p. 108) Appellant was sentenced to five years confinement in the Texas Department of

---

[1] Appellant was also charged by indictment in Cause No. 14-0874-K368 with 4 counts of promotion of child pornography and 22 counts of possession of child pornography. Appellant pled guilty to promotion of child pornography in counts 2, 3, 4 and possession of child pornography in counts 5-26. As in Cause No. 12-0465-K277, Appellant's plea was given open to the court with no agreed punishment. Both indictments were handled simultaneously during the punishment hearing.

Corrections on each count to run concurrent with Appellant's sentence in Cause No. 14-0874-K368. (R.R. VI, p. 110) Appellant gave a timely notice of appeal on August 20, 2014 and filed a timely motion for a new trial on August 21, 2014. (C.R. pp. 102-106)

**STATEMENT OF FACTS**

Appellant was charged in two indictments. In Cause No. 14-0874-K368 Appellant was charged with 4 counts of promotion of child pornography and 22 counts of possession of child pornography. The State later waived one count of promotion of child pornography. In Cause No. 12-0465-K277 Appellant was charged with 9 counts of promotion of child pornography and 15 counts of possession of child pornography. In Cause No. 14-0874-K368 Appellant entered a plea of guilty to counts 2, 3, 4 for promotion of child pornography and 5-26 for possession of child pornography. In Cause No. 12-0465-K277 Appellant entered a plea of guilty to counts 1-9 for the lesser-included charge of possession of child pornography and 10-24 for possession of child pornography. Appellant waived his right to a jury trial, and elected to have his sentence determined by the Court. (R.R. IV, pp. 5-15)

During his guilty plea, Appellant testified that he was arrested on March 21, 2012 when officers from the Attorney General's Office came to his house and executed a search warrant. In the process of executing the search warrant Appellant was questioned about suspected child pornography found on a computer located in the house. Appellant stated he had inadvertently seen the images periodically while searching for other things and that he tried to delete them whenever he saw them. Ultimately, the investigation found over 25,000 images containing child

pornography in addition to various videos and other media files. (R.R. IV, pp. 16-19)

Two days following Appellant's plea, a punishment hearing was held. After both parties waived opening, the State called Sergeant Ross Behrens. Sergeant Behrens testified that he worked with the Texas Attorney General's Office and was assigned to the Cyber Crime Unit. He went on to say that as a member of the Cyber Crimes Unit he investigated crimes committed with computers that involved children. He explained that he often worked in an undercover capacity, particularly when working online solicitation cases. (R.R. V, pp. 8-10)

Sergeant Behrens testified that he received specialized training through Internet Crimes Against Children, investigative techniques, Undercover Chat and several different peer-to-peer trainings. He described a peer-to-peer network as a file-sharing network where someone can get online and download programs in order to communicate though the computer with someone else. They can trade documents, images, videos or whatever they see fit. He explained that these programs are not preloaded on a computer but rather, have to be sought out and downloaded from a website. Sergeant Behrens also testified that while these programs can be used to share child pornography, they can also be used for other purposes. He testified that child pornography is sought out and actively downloaded by a person and that in his experience he has never seen an internet-

9

user inadvertently come into possession of files containing child pornography. (R.R. V, pp. 11-16)

Sergeant Behrens testified that in a typical investigation he employs proprietary software to scan file-sharing networks in order to identify I.P. addresses that are sharing files containing suspected child pornography. (R.R. V, pp.17-18) He then initiates a download of the files and if confirmed to contain child pornography, he sends the internet-provider an administrative subpoena to obtain information on the subscriber. This is done to confirm who had the IP address assigned to them on the day Sergeant Behrens connected and downloaded the file. With this information he obtains and executes a search warrant of the location from which the files were downloaded. (R.R. V, pp. 23-30)

Sergeant Behrens testified that in this case he obtained a search warrant after downloading between 120-130 images and videos of child pornography from Appellant's IP address from November of 2011 until February of 2012. He said the search warrant was executed on March 21, 2012. (R.R. V, pp. 38-40) While the search warrant of Appellant's residence was being executed, Sergeant Behrens interviewed Appellant. He read Miranda warnings to Appellant and told him the reason for the search. Appellant admitted to Sergeant Behrens that he had used peer-to-peer networks. Specifically, he admitted using several network programs including eDonkey, the same program that Sergeant Behrens used to obtain child

pornography from Appellant's IP address. He also admitted he had seen thousands of child pornography files but that he never sought them out, that he tried to delete them, and that they would randomly pop up while he was searching through adult pornography. Sergeant Behrens testified that he had never heard of child pornography popping up when someone visits a legal adult pornography site. (R.R. V, pp. 47-51)

Sergeant Behrens testified that two computers were found in Appellant's dining room, one computer was in the master bedroom shared by Appellant's wife and daughter, and two computers were found in Appellant's bedroom. One of the computers was in his bedroom and the other was in the bedroom closet. The State offered several photos taken of the rooms where the computers were found as well as photos of the computers themselves into evidence as State's Exhibits No. 5-20. The defense voiced a relevance objection. The court overruled the objection and allowed the exhibits into evidence. (R.R. V, pp. 52-58)

Appellant was arrested on the same day the warrant was executed. Sergeant Behrens said he made the decision to arrest Appellant based upon files containing child pornography that were found on the computer that Appellant admitted was used exclusively by him. (R.R. V, p. 62)

Sergeant Behrens testified that he went back to search Appellant's residence on two more occasions. He identified State's Exhibits No. 2 and 3 as being

consent forms to search for computer-related material that Appellant's wife, Mrs. Bobbie Weatherford, had signed and said the searches were conducted on April 3, 2012 and April 23, 2012 respectively. He also identified State's Exhibit No. 4 as being a child's drawing that was wrapped around a computer hard drive to conceal it. Defense counsel objected to Exhibit No. 4 saying it was irrelevant and prejudicial outweighing probative value. The trial court overruled the objection. (R.R. V, pp. 62-65)

Sergeant Behrens went on to say that items recovered during the follow up search included a Maxtor internal hard drive, 3 CDs, and an 8 millimeter camera. Sergeant Behrens was asked to describe what was on the videos recorded by the camera to which defense counsel objected. Counsel for Appellant argued the camera videos depicted extraneous acts not associated with the counts Appellant was charged with and therefore, should be inadmissible based upon Texas Rules of Evidence 403, 404, 405 and 802. Defense counsel also objected based upon Fifth Amendment, Sixth Amendment and due process violations. The State testified that the images in the camera videos were not child pornography but could be construed as improper photography. The State argued that the videos were relevant and being offered as an explanation to the sexual gratification and the manufacturing and promotion of the child pornography in Counts 2, 3 and 4 of the indictment that Appellant pled guilty to. The State felt that as such, the videos

showed Appellant's motive. The State also confirmed that the video had been presented to defense counsel in 2013 along with a Rule 404 notice. The trial court overruled the defense objection and Sergeant Behrens was allowed to describe the content of the videos. One video was of children in a pool across a street. There were two or three girls in the video wearing bikinis. There was another video of a neighbor girl helping her father tie down a boat. There was also a video of Appellant's daughter in which she was completely nude. (R.R. V, pp. 66-70)

Detective Behrens was asked if Appellant ever gave any indication he had inappropriately touched his daughter, S _ _ _. Defense counsel again objected based on Rule 403. The court overruled the objection. Detective Behrens said that during the course of his investigation he saw indications that Appellant had touched his daughter in a way that was sexual in nature. He went on to say he saw a progression in Appellant's case, going from downloading child pornography, to making child pornography, to touching a child. (R.R. V, pp. 71-73)

On cross-examination, Sergeant Behrens testified that in his opinion the officers who accompanied him in executing the search warrant could have been more thorough in their search and that some of the evidence was collected on dates subsequent to the execution of the search warrant. (R.R. V, pp. 82-88) Sergeant Behrens confirmed that in the process of downloading files containing adult pornography from a file-sharing network it is possible that child pornography

could be mixed in with files of adult pornography. (R.R. V, p. 92) He also confirmed that the video of Appellant's daughter that was in the camera was not "lewd." Sergeant Behrens agreed that she was nude and dancing around but not exposing genitalia, etc.. (R.R. V, pp. 92-95)

The next witness called by the State was forensics investigator, Sergeant Steven Ried. As a Computer Forensics Certified Examiner working for the Attorney General's Office, Sergeant Ried's job was to preview computers seized during execution of the search warrant, and to then thoroughly search all of the digital media that was seized during the investigation. His training and experience included being an EnCase Certified Examiner, an AccessData Certified Examiner and Computer Forensics Certified Examiner through the International Association of Computer Investigative Specialists. (R.R. V, pp. 97-100) Sergeant Ried testified that in the course of previewing the computer seized at Appellant's home he identified files containing child pornography and that based on his forensic investigation he determined the computer in question to be that of Appellant's. (R.R. V, pp. 108-109) Sergeant Ried testified that he had no way of doing digital forensics on a videotape such as an 8-millimeter film but he was able to do forensics on the other items of interest. (R.R. V, pp. 116-117)

During the State's direct examination, Sergeant Ried identified the items taken from Appellant's home that he performed forensic analysis on and whether

or not he found child pornography on them.  He also identified items 25, 27 and 28 as those that were later recovered from the consent-to-searches.  Those items included CDs, DVDs and two hard drives.  (R.R. V, pp. 117-122)  Sergeant Ried identified State's Exhibits No. 21-66 as being DVD's and CD's containing images and videos he found during his forensic analysis of the items in Appellant's case.  The State tendered to opposing counsel and offered into evidence the photos as State's Exhibits No. 30-66 and the DVDs as State's Exhibits No. 21-29.  (R.R. V, pp. 125-126)

Defense counsel took Sergeant Ried on voir dire regarding the admission of Exhibit's No. 21-66.  Sergeant Ried testified that he was not able to identify each item of evidence in terms of which particular count it was tied to.  He could not say if the State's Exhibits No. 21-66 were all tied to counts in the indictment that Appellant had pled to.  For this reason defense counsel argued that the State had not set the proper predicate for their admission into evidence and objected.  The State argued that all of the images found by Sergeant Ried to be child pornography were within the scope of their direct in a sentencing hearing.  Additionally, the State testified that the 49 exhibits being introduced were the 49 counts in which Appellant pled guilty.  The court overruled defense counsel's objection and admitted State's Exhibits No. 21-66 into evidence.  (R.R. V, pp. 126-131)

During lengthy questioning by the State, Sergeant Ried provided testimony

identifying the specific images and videos in exhibits 21-66. He testified as to what each image and video depicted and why it would be classified as child pornography. In all, Sergeant Ried said he found Appellant to be in possession of more than 25,000 images of child pornography. (R.R. V, pp. 137-162)

Next, the State asked Sergeant Ried if he found a video or image of Appellant's daughter during his analysis. He testified that he did. Defense counsel objected saying the video or image of Appellant's daughter was associated with a count in the indictment that was dismissed for lack of evidence. The State argued that the evidence was relevant to punishment. The court overruled Appellant's objection. (R.R. V, pp. 163-164)

Sergeant Ried testified that he learned one of Appellant's daughters was named J _ _ _ when he saw it as the title of one of the videos. He testified that other videos classified as child pornography involved Appellant's other daughter, S _ _ _, and were found on items no. 1, 25, 28 and that he believed those videos were titled "SL6" and then a number. The State then offered Exhibits No. 67, 68, and 69 into evidence. These exhibits were described as DVD's of three videos titled SL6-1, SL6-2 and SL6-3. Defense counsel did not object to their admittance. Sergeant Ried testified that the videos labeled SL6-1, SL6-2 and SL6-3 were child pornography because the female child in them had her breasts and vagina exposed towards the camera. Sergeant Ried testified the videos would also be classified as

16

manufacturing of child pornography due to the fact that a female child in the videos was being posed. Sergeant Ried testified that Appellant could be seen in the video manipulating the camera, directing the child to pose in front of the camera, and in one instance, adjusting his penis through his pants. (R.R. V, pp. 165-170)

The State then turned Sergeant Ried's attention toward the video he deemed of interest that had Appellant's daughter, J _ _ _ , in it. Defense counsel objected saying the video was irrelevant, hearsay, and prejudicial because it is associated with a count that was dismissed. The State responded that everything was relevant in punishment and that the video would be relevant even in guilt/innocence because it showed motive, intent, plan and scheme of not only manufacturing the video but of what he was going to do with it. The court overruled defense counsel's objection. Sergeant Ried testified that the video of J _ _ _ was named "J _ _.avi" and the State tendered the video to defense counsel and offered it into evidence as State's Exhibit No. 70. Once again, defense counsel objected saying there would be hearsay on the video. The court asked if there was audio. The State said no. The video was then published to the court and described as not being child pornography. On the video a female child could be seen changing into a bathing suit but her genitals or breasts are never exposed because she steps out of view of the camera. Sergeant Ried testified that he believed he found the video on

items No. 1, 25, and 28. He also testified that there were "known.met" files on these three items. He explained that a "known.met" file is one used by eDonkey or the eMule program to keep track of information about files that are either uploaded or downloaded. Sergeant Ried testified that in the "known.met" files there were images and videos being traded by Appellant to other individuals and though he did not recall if he saw evidence that the video "J _ _.avi" was being traded, uploaded, or downloaded in those "known.met" files, he did recall that an image was. The image that was being shared was a snapshot of the "J _ _.avi" video. The image was a snapshot of J _ _ _ getting undressed where you could see her buttocks. (R.R. V, pp. 172-178)

Sergeant Ried testified that he also discovered chats that Appellant had engaged in on these peer-to-peer networks. The "GigaTribe" chat file was found on Item No. 1 and Item No. 25. Item No. 1 was the Dell desktop from appellant's bedroom and item 25 was the Seagate hard drive. State's Exhibit No. 71, described as "about ten pages worth of chat text" was shown to Sergeant Ried who testified that he recognized it and described it as a chat that appears to be between two persons by the name of Chris and "Tornado." State's Exhibit No. 71 was tendered to defense counsel and offered into evidence. Defense counsel objected. Sergeant Ried went on to explain why he believed Tornado was actually Appellant. He explained that among the many chats he viewed, Tornado was the character or

screen name consistently used. That led Sergeant Ried to believe that Tornado was the user of the computer where the chats were located. According to Sergeant Ried, Tornado was the holder of an account that requested information and at times provided information. He testified that Tornado shared the snapshot from J _ _.avi. This fact, along with the fact that Tornado was the consistent user name on the Dell desktop that was shown to be Appellant's computer, led Sergeant Ried to determine that Tornado was Appellant. The State offered the chat into evidence as State's Exhibit No. 71 to which the defense objected, saying the chat contained hearsay and that the proper predicate had not been laid. (R.R. V, pp. 180-183)

The State argued that the chat was not hearsay because it was a statement by Appellant. The State went on to say that "the statements go to identity, intent, motive, plan and scheme of the Defendant, not of the other party, and it's incriminating statements against himself." Finally, the State argued they were not offering it for the truth of the matter asserted. They were offering it for the context of what J _ _.avi was filmed and uploaded for, and what SL6-1 was filmed and uploaded for. The court expressed a concern that the chat did not deal with intent to distribute videos, SL6-1, 2 and 3. (R.R. V, pp. 180-185) Again, the State argued that while the chat was not about SL6 it would show his motive of what he planned to do with it. When asked by the court if there was any information that the chat was done at or anywhere near the time that videos SL6-1, 2, and 3 were

made the State answered "no." The State explained that the films were made over a period of at least seven years and that although the chat was not about the SL6 videos it was a bad act that was relevant during a punishment hearing. The court reminded Appellant's counsel that this was a punishment hearing without a jury. Defense counsel argued that Rule 403 was "still in play" to which the court responded "I know it does, but I'm going to go ahead and overrule the objection and allow it in". State's Exhibit No. 71, the chat between Appellant "Tornado" and Chris, was admitted into evidence and published to the court by having Sergeant Ried take the role of Tornado and read statements made by him, and State's prosecutor, Danny Smith, take the role of Chris and read his statements. (R.R. V, pp. 183-199)

Sergeant Ried testified that at the end of the chat Tornado requested pictures of Chris sexually gratifying himself with J _ _'s pictures. The State offered photos into evidence as State's Exhibit No. 72 through 75. State's Exhibit No. 72 was described as a school photo of Appellant's daughter. State's Exhibit No. 73 was described as the same school photo but this time with an adult male penis over her mouth. State's Exhibit No. 74 was a photo of the same picture depicted in State's Exhibit No. 73 with semen on it. State's Exhibit No. 75 was semen on a screen capture of "J _ _.avi." Defense counsel objected to all photos on the basis of Rule 403, hearsay, Fifth Amendment, due process and relevance. The court overruled

20

the objections. Sergeant Ried testified that Tornado requested Chris send him pictures of him enjoying "J _ _.avi." Sergeant Ried went on to say that although "J _ _.avi" did not reach the definition of child pornography, it was his belief that it was made and uploaded for sexual gratification. Regarding some of the specific content of the chat, Sergeant Ried agreed that Appellant made a statement that amounted to a confession to indecency by contact with his daughter, J _ _ _ , when he said to Chris that he had touched her breast. Defense counsel objected based on Rule 403, Rule 404, Art. 37.07(1) and Fifth Amendment. The State countered that Appellant's confession on the chat was already in evidence. The court agreed and overruled the objection. (R.R. V, pp. 200-202)

Sergeant Ried testified that in his training and experience he had also been made aware of a progression in behaviors. In his forensic analysis of Appellant's case he saw a progression of behavior. He saw a progression from hiding the camera when videotaping his oldest daughter, to having the camera out while videotaping his youngest daughter. Sergeant Ried testified that during the chat Appellant said he wanted to have sexual relationships with his daughter but that he thought it was "too risky". (R.R. V, pp. 203-204)

On cross-examination, Sergeant Ried testified that six items were found in Appellant's home that contained child pornography. He went on to testify that while his forensics investigation was able to determine which computers contained

21

child pornography, he could not determine who in the household was using which computer at any given time. And while he could sometimes determine which downloaded files had actually been viewed, he could not determine who viewed them. He also could not say which items contained which particular State's exhibit without having the file names with him. (R.R. V, pp. 207-213)

Sergeant Ried testified that some of the pornography found during his forensic analysis could have come from countries outside the United States and that some of it could have been made years ago. He testified that there may have been legal adult pornography in the items he analyzed and that it is possible for someone to download images without looking at each and every one. (R.R. V, pp. 210-214)

When asked by the defense, Sergeant Ried confirmed that State's Exhibit 70, the video titled "J _ _.avi" was not child pornography. He testified the videos titled "SL6" and introduced into evidence as State's Exhibits No. 67, 68 and 69 were child pornography however. Sergeant Ried said that he found no evidence that any of the three videos deemed child pornography had been uploaded or shared. (R.R. V, pp. 214-216)

At the end of the punishment hearing and after both sides had rested, Appellant's counsel made a motion to the court for a directed verdict in Cause No. 14-0874-K368. The defense explained to the court that although Appellant pled

guilty to 3 counts of promotion of child pornography there was insufficient evidence to support his plea. Counsel asked the court to "direct a verdict at least as to the second degree nature of it and reduce it to a consideration for a third degree possession of child pornography." Defense counsel argued that the only evidence of intent to disseminate child pornography was "bootstrapped" through the count that was dismissed because of lack of evidence. For this reason Appellant's attorney asked the court to consider Counts 2, 3, and 4 as possession of child pornography rather than possessing it with intent to distribute and promote. The court responded that Appellant had already pled guilty to those crimes and as such, the guilt/innocence phase of evidence was over. The court noted that only punishment was being addressed at that point. Appellant's motion for a directed verdict was denied. (R.R. VI. pp. 81-83)

After both sides presented closing arguments the court sentenced Appellant to 20 years imprisonment for each count of promotion of child pornography that Appellant pled guilty to in Cause No. 14-0874-K368. These sentences were to run consecutively. Appellant was sentenced to 5 years imprisonment for each count of possession of child pornography he pled to in Cause No. 14-0874-K368 and Cause No. 12-0465-K277. These sentences were to run concurrently. (R.R. VI, pp. 109-110)

## SUMMARY OF THE ARGUMENT

Under *Anders v. California,* 386 U.S. 738, 744 (1967)*,* a court-appointed attorney may not raise an issue in an appeal if he makes a conscientious examination of the case and finds the appeal wholly frivolous.  To comply with *Anders*, counsel must isolate "possibly important issues" and "furnish the court with references to the record and legal authorities to aid it in its appellate function." *United States v. Johnson,* 527 F.2d 1328, 1329 (5th Cir.1976).  After the appellant is given an opportunity to respond, the court makes a full examination of the record to detect whether the case is frivolous.  *Anders,* 386 U.S. at 744.

The undersigned court-appointed appellate attorney has carefully reviewed the trial record in this case.  It is his professional opinion that there is no issue of arguable merit in this case, and thus Appellant's appointed counsel files this brief and moves for withdrawal.

**ARGUMENT**

**THERE IS NO ARGUABLE ISSUE WHICH SUPPORTS AN APPEAL IN THIS CASE**

Following a careful review of the complete record in this case: the Reporter's Record and the Clerk's Record; after talking with Appellant's court-appointed trial attorney; and after researching the law as it relates to the facts of this case, counsel has concluded that any further proceedings on behalf of Appellant would be wholly frivolous and without arguable merit within the meaning of *Anders v. California*, 386 U.S. 738 (1967) and its progeny.[2] Pursuant to *Anders,* Appellant's appointed counsel files this brief.

**A.     The *Anders* Brief.**

The purpose of an *Anders* brief is to support counsel's motion to withdraw by showing that he has performed a conscientious examination of the record and that the appeal is so frivolous that an appellant should be denied his constitutional right to appointed counsel on appeal.  *Jeffery v. State*, 903 S.W.2d 776, 779 (Tex.App.-Dallas 1995, no pet.).  The ultimate test of an *Anders* brief is whether it

---

[2] A frivolous appeal has been defined as an appeal in which the result is obvious or the arguments of error are wholly without merit.  *Coghlan v. Starkey*, 852 F.2d 806, 811 (5th Cir.1988).  The court defined a "frivolous appeal" as one where "the only theories that the attorney can discover after this conscientious review of the record and the law are 'arguments that cannot conceivably persuade the court ...' " *Johnson v. State*, 885 S.W.2d at 645.  Any point which is "arguable on [the] merits" is, by definition, not frivolous. *Johnson* at 645.  Yet another definition is an appeal is "frivolous" when "the trial court's ruling[s were] correct" or "the appellant was not harmed by the ruling [s]." *High v. State*, 573 S.W.2d 807, 813 (Tex.Crim.App. [Panel Op.] 1978).

contains a professional evaluation of the record demonstrating why, in effect, there are no arguable grounds to be advanced. *Johnson v. State*, 885 S.W.2d 641, 646 (Tex.App.-Waco 1994, pet ref.)

**B.     The "Arguable Issues of Law."**

In reaching the conclusion that there are no arguable issues of law that support Appellant's appeal, counsel has considered the following issues of possible merit, which he believes are the only possible issues raised by this record.

**1.  The Evidence Was Insufficient To Prove Appellant's Guilt for the Charge of the Indictment.**

Appellant could argue that the evidence was legally insufficient to support his conviction. A judicial confession, standing alone, provides sufficient evidence to support the trial court's judgment. See *Dinnery v. State*, 592 S.W.2d 343, 353 (Tex.Crim.App. 1979)(opinion on rehearing). Appellant's plea of guilty and judicial confession to the indictment constitutes a waiver of all complaints regarding the sufficiency of the evidence to support his conviction. Thus this would be a frivolous argument to make on appeal.

**2.     Appellant's Plea of Guilty to the Indictment Was Not Made Knowingly and Voluntarily.**

Appellant could argue that his plea of guilty was not made knowingly and voluntarily. However, the undersigned appellate counsel has carefully reviewed the record of the plea and has concluded that the plea was done according to

statutory and case law.

Before accepting a defendant's guilty plea, a trial court must satisfy itself that the accused understands "the consequences of his plea." *Liggins v. State,* 979 S.W.2d 56, 67 (Tex.App.-Waco 1998, pet. ref.); Art. 26.13, V.A.C.C.P.. However, the trial judge need not ask any certain questions nor follow any formula to substantially comply with Art. 26.13. *Richards v. State*, 562 S.W.2d 456, 458 (Tex.Crim.App. 1977)(opinion on rehearing). The trial court need only substantially comply with the requirements of Art. 26.13, V.A.C.C.P.. *Ex parte Smith*, 678 S.W.2d 78, 79 (Tex.Crim.App. 1984). Art. 26.13, V.A.C.C.P. mandates that certain "admonishments" must be given to a criminal defendant prior to accepting a plea of guilty. These include among other things the range of the punishment attached to the offense. These admonishments may be made orally and/or in writing. *Blanco v. State*, 771 S.W.2d 598, 599 (Tex.Crim.App.-Corpus Christi 1989, no pet.). If the court makes the admonitions in writing, it must receive a statement signed by the defendant and the defendant's attorney that he understands the admonitions and is aware of the consequences of his plea. Art. 26.13, V.A.C.C.P.. If done in writing, there is no requirement to verbally inquire about the voluntariness of a plea after a defendant and trial counsel have signed the written waiver and the judge has established that Appellant has read and understood the waivers. *Smith v. State*, 853 S.W.2d 140, 141 (Tex.App.-Corpus

27

Christ 1993, no pet.); *Rodriguez v. State*, 850 S.W.2d 603, 607 (Tex.App.-El Paso 1993, no pet.). The trial judge shows compliance with this statute by approving the plea papers containing the written admonishments by signing a statement reciting his satisfaction with the same and ordering the documents to be filed in the papers of the case. *Munoz v. State*, 840 S.W.2d 69, 72 (Tex.App.-Corpus Christ 1992, pet. ref).

In the instant case, the trial court satisfied himself that appellant was aware of what he was doing by having him sign both written plea papers that appellant had read and gone over with his attorney, and then by having appellant again acknowledge that he understood what he was doing orally on the record. Appellant testified that he wanted to waive his right to a jury trial and that he wanted to have a sentencing hearing in front of the judge. Appellant testified that he understood the consequences of his open plea, including the fact that he was subject to the full punishment range for a third degree felony in each count he was pleading to. Appellant testified he was pleading guilty to each count because he was guilty and that he was doing so knowingly and voluntarily. Appellant also testified that he understood that by entering his plea he was waiving his right to appeal any issue with regard to guilt/innocence and could only appeal the punishment that he might receive with regard to the punishment hearing. (R.R. IV, pp. 5-12, 33)

## CONCLUSION

For the preceding reasons, counsel has concluded that any further proceedings on behalf of Appellant would be wholly frivolous and without arguable merit within the meaning of *Anders v. California*, 386 U.S. 738 (1967) and its progeny. For this reason counsel respectfully moves to withdraw as counsel on appeal for Appellant.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Counsel respectfully prays that this Honorable Court permit him to withdraw after this Court's own examination of the record in this cause and to afford Appellant his right to file any *pro se* brief he may wish to file.

Respectfully submitted,

/s/ Dal Ruggles
Dal Ruggles
Attorney at Law
1103 Nueces St.
Austin, Texas 78701
Telephone: (512) 477-7991
Facsimile: (512) 477-3580
SBN: 24041834

**ATTORNEY FOR APPELLANT**
**JAMES ALAN WEATHERFORD**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Appellant's Brief on Original Appeal was delivered, via e-file, to the Williamson County District Attorney's Office on this the 1st day of June, 2015.

/s/ Dal Ruggles
Dal Ruggles

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief contains 5,899 words, as calculated by the word count function on my computer.

/s/ Dal Ruggles
Dal Ruggles

NO. 03-14-00528-CR

| JAMES ALAN WEATHERFORD | § | IN THE COURT OF APPEALS |
|---|---|---|
| | § | |
| V. | § | THIRD JUDICIAL DISTRICT |
| | § | |
| THE STATE OF TEXAS | § | SITTING AT AUSTIN, TEXAS |

## CERTIFICATE OF COUNSEL

In compliance with the requirements of *Anders v. California*, 386 U.S. 378 (1967), I, Dal Ruggles, court-appointed counsel for appellant, James Alan Weatherford, in the above-referenced appeal, do hereby verify, in writing, to the Court that I have:

1. notified appellant that I filed a motion to withdraw as counsel with an accompanying *Anders* brief, and provided a copy of each to appellant;

2. informed appellant of his right to file a pro se response identifying what he believes to be meritorious grounds to be raised in his appeal, should he so desire;

3. advised appellant of his right to review the appellate record, should he wish to do so, preparatory to filing that response;

4. explained the process for obtaining the appellate record, provided a *Motion for Pro Se Access to the Appellate Record* lacking only appellant's signature and the date, and provided the mailing address for this Court; and

5. informed appellant of his right to seek discretionary review pro se should this Court declare his appeal frivolous.

Respectfully submitted,


 /s/ Dal Ruggles_____
Dal Ruggles
Attorney for Appellant

ACCEPTED
03-14-00528-CR
5515859
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/2/2015 4:13:16 PM
JEFFREY D. KYLE
CLERK

June 1, 2015

**VIA CERTIFIED MAIL**

Mr. James Alan Weatherford
TDCJ # 01953853
Middleton Unit
13055 FM 3522
Abilene, Texas 79601

Re: *James Alan Weatherford v. State of Texas*
    Trial Court Cause No. 12-0465-K277 in the District Court of Williamson County
    Third Court of Appeals Cause No. 03-14-00528-CR

Dear Mr. Weatherford:

Enclosed please find a copy of the motion to withdraw as counsel and brief pursuant to *Anders v. California* that I have prepared and filed in your case. After a diligent search of both the clerk's record and reporter's record in your case and a review of the applicable law, it is my opinion that no reversible error occurred at your plea and sentencing proceeding.

Whenever appellate counsel files a motion such as this, the law provides the appellant the right to review the record and file a response identifying to the appellate court any grounds he thinks are non-frivolous issues to be raised on his behalf that the appellate court should consider in deciding whether the case presents any meritorious grounds for appeal. Because I have filed this motion and brief, you now have the right to review the record and file a response or brief if you so choose. To assist you in obtaining the record if you wish to review it, I have enclosed a *Motion for Pro Se Access to the Appellate Record* for you to file. In order to obtain the appellate record, you must sign and date the motion and mail it to the Third Court of Appeals within ten days of the date of this letter at the following address:

> Jeffrey D. Kyle, Clerk
> Third Court of Appeals
> Post Office Box 12547
> Austin, Texas 78711

The Court of Appeals will then direct the clerk of the trial court to provide you with a copy of the appellate record. Your response will be due to be filed in the Third Court of Appeals within 30 days of the date the clerk provides the record to you.

Whether or not you file a response, the law requires the Court of Appeals to review the record to determine if the Court agrees with my assessment that no meritorious grounds for appeal exist, i.e., that no reversible error exists. If the Court does not agree, but instead believes there are

non-frivolous issues to be raised on your behalf, the Court must abate the appeal to have another attorney appointed to review the record on your behalf.

Should the Court of Appeals ultimately determine that there are no meritorious grounds to be raised and that your appeal is frivolous, the Court will affirm your conviction and sentence. You may then file a pro se petition for discretionary review with the Texas Court of Criminal Appeals. Such petition must be filed within 30 days of the date the Court of Appeals renders its judgment.

Feel free to write me if you have any questions about the procedure utilized in your appeal. I will do my best to answer any questions you may have.

Sincerely,

Dal Ruggles

Enclosures